IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| YEXIS SARAVIA LOPEZ, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | 1:25-cv-1847 (LMB/WEF) |
| ) | |
| U.S. IMMIGRATION AND CUSTOMS ) | |
| ENFORCEMENT, Washington Field Office ) | |
| Director, Enforcement and Removal ) | |
| Operations, et al., ) | |
| | |
| Respondents. | |

ORDER

Petitioner Yexis Saravia Lopez ("Saravia"), an alleged native and citizen of El Salvador, has filed a two-count Petition for Writ of Habeas Corpus ("Petition") under 28 U.S.C. § 2241, in which he asserts that he has been illegally detained by the U.S. Department of Homeland Security's ("DHS") Immigration and Customs Enforcement ("ICE") agency since September 17, 2025. Specifically, he alleges that his characterization by DHS as an "applicant for admission" pursuant to 8 U.S.C. § 1225(a), thus subjecting him to mandatory detention under 8 U.S.C. § 1225(b)(2), violates his statutory right to a bond determination hearing pursuant to 8 U.S.C. § 1226(a) (Count I); and his due process rights (Count II).

Saravia is currently detained at the Farmville Detention Center, which is within this Court's jurisdiction and the basis upon which he is suing Jeffrey Crawford, the warden of the Farmville Detention Center. Saravia has also sued Russel Hott, ICE Washington Field Office's Enforcement and Removal Operations Director; and Pamela Bondi, the Attorney General (collectively "the federal respondents"). For the reasons discussed in this Order, the Court finds that Saravia is detained pursuant to 8 U.S.C. § 1226(a). Accordingly, his Petition will be granted as to Count II,

and the respondents will be ordered to release him from custody and provide him with a bond hearing before an Immigration Judge pursuant to 8 U.S.C. § 1226(a).[1]

I.

Saravia has resided in the United States since May 2008, and lives in Capitol Heights, Maryland, with his wife of over eight years, who is a U.S. citizen. [Dkt. No. 1] at ¶¶ 8-10. In July 2023, Saravia began the process of seeking permanent residence when his wife filed a form I-130, Petition for Alien Relative, which was subsequently approved in September 2024. Id. at ¶ 11. See also [Dkt. No. 1-2]. Saravia is eligible to receive permanent residence after he obtains a waiver of unlawful presence. [Dkt. No. 1] at ¶ 11. Saravia has worked as a painter since 2018. [Dkt. No. 8] at 1.

On or about September 17, 2025, Saravia was "detained by ICE officers in Bladensburg, Maryland." [Dkt. No. 1] at ¶ 12. That same day, Saravia was issued a Notice to Appear ("NTA"),[2] which charged him with being inadmissible to the United States—and therefore subject to removal—pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) and 1182(a)(7)(A)(i)(I). [Dkt. No. 6-1] at ¶ 7. Saravia was scheduled for an initial master calendar hearing before the Annandale Immigration Court on October 21, 2025. Id. On October 21, 2025, at the initial master calendar hearing, petitioner's counsel requested a continuance to properly prepare for removal proceedings, and the Annandale Immigration Court granted this request, resetting the hearing to November 5, 2025. Id.

---

[1] Because the Court is granting relief on due process grounds, it need not address Saravia's arguments based on the bond regulations. Additionally, the Court finds that Saravia has no cognizable claim for attorney's fees because a habeas proceeding is not a "civil action" under the EAJA. Obando-Segura v. Garland, 999 F.3d 190, 195 (4th Cir. 2021); accord Luna Quispe v. Crawford, 1:25-cv-1471-AJT-LRV, Dkt. No. 17 at 6.

[2] A Notice to Appear is a "[c]harging document" that "initiates a proceeding before an Immigration Judge." 8 C.F.R. § 1003.13.

at ¶ 8. Since Saravia was detained, ICE has not set bond, and Saravia has not been scheduled for a bond hearing before an Immigration Judge. See [Dkt. No. 1] at ¶ 14.

Saravia filed his Petition for Writ of Habeas Corpus on October 23, 2025. [Dkt. No. 1]. This Court subsequently entered an Order requiring that Saravia not "be removed or transferred from this district for any reason without this Court's permission." [Dkt. No. 2]. On October 30, 2025, Saravia filed a Proposed Release Plan, which shows a fixed home address Capitol Heights, Maryland, where he will reside if released. [Dkt. No. 8]. Included in Saravia's Proposed Release Plan is an affidavit from his wife, who states that she and Saravia have resided at his fixed home address since August 2017, and that Saravia is a Jehovah's Witness who has attended meetings at his local Kingdom Hall since 2017. Id. at 1. The federal respondents filed an opposition. [Dkt. No. 6]. Finding that oral argument will not aid the decisional process, the Petition will be resolved on the papers submitted.

II.

The central question posed in Saravia's Petition is whether he is subject to mandatory detention under § 1225(b)(2) or instead subject to discretionary detention and entitled to a bond hearing under § 1226(a). The federal respondents contend that Saravia's detention is governed by § 1225(b)(2). They maintain that whether an individual is detained under § 1225(b) or § 1226(a) lies in the "distinction between aliens who are detained after a lawful admission into the U.S. and those who are present without a lawful admission." [Dkt. No. 6] at 6. According to the federal respondents, anyone in the United States who has not been admitted is subject to mandatory detention under § 1225(b), and § 1226(a)'s discretionary detention provisions apply only to those who have been given legal status and subsequently placed into removal proceedings. Id. at 12-13. Therefore, they argue that because Saravia has not been admitted "as a

3

legal matter" into the United States, he is inadmissible under 8 U.S.C. § 1182(a), considered to be an applicant for admission under § 1225(a), and subject to mandatory detention under § 1225(b)(2). Id. at 5.

This argument reflects DHS's novel interpretation of decades-old immigration detention statutes which, as multiple district courts throughout the country have found,[3] is contrary to DHS's implementing regulations and published guidance, the decisions of its immigration judges (until very recently), longstanding practice in U.S. immigration law, the Supreme Court's interpretation of the statutory scheme, and traditional tools of statutory construction. See Romero v. Hyde, 2025 WL 2403827, at *9 (D. Mass. Aug. 19, 2025). This new approach will also subject "millions more undocumented immigrants to mandatory detention, while simultaneously narrowing § 1226(a) such that it would have an extremely limited (if any) application." Lopez Benitez v. Francis, 2025 WL 2371588, at *8 (S.D.N.Y. Aug. 13, 2025).

This Court has previously addressed several of these points in Hasan v. Crawford, 2025 WL 2682255 (E.D. Va. Sept. 19, 2025), and maintains and incorporates that reasoning into this Order. That same reasoning has been applied in multiple cases since this Court issued its

---

[3] See, e.g., Gomes v. Hyde, 2025 WL 1869299 (D. Mass. July 7, 2025); Martinez v. Hyde, 2025 WL 2084238 (D. Mass. July 24, 2025); Lopez Benitez v. Francis, 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); Maldonado v. Olson, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); Arrazola-Gonzalez v. Noem, 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025); J.O.E. v. Bondi, 2025 WL 2466670 (D. Minn. Aug. 27, 2025); Jacinto v. Trump, 2025 WL 2402271 (D. Neb. Aug. 19, 2025); Samb v. Joyce, 2025 WL 2398831 (S.D.N.Y. Aug. 19, 2025); Dos Santos v. Noem, 2025 WL 2370988 (D. Mass. Aug. 14, 2025); Garcia Jimenez v. Kramer, 2025 WL 2374223 (D. Neb. Aug. 14, 2025); Anicasio v. Kramer, 2025 WL 2374224 (D. Neb. Aug. 14, 2025); Rosado v. Figueroa, 2025 WL 2337099 (D. Ariz. Aug. 11, 2025); Orellana Juarez v. Moniz, 2025 WL 1698600 (D. Mass. June 11, 2025); Hernandez Nieves v. Kaiser, 2025 WL 2533110 (N.D. Cal. Sept. 3, 2025); Vasquez Garcia v. Noem, 2025 WL 2549431 (S.D. Cal. Sept. 3, 2025); Carmona-Lorenzo v. Trump, 2025 WL 2531521 (D. Neb. Sept. 3, 2025); Lopez-Campos v. Raycroft, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); Kostak v. Trump, 2025 WL 2472136 (W.D. La. Aug. 27, 2025).

memorandum opinion in Hasan, and where this Court has required that a petitioner be provided with a standard bond hearing pursuant to § 1226(a), the petitioner has been granted bond. Vargas Nunez v. Lyons et al., 1:25-cv-1574-LMB-WEF, Dkt. No. 12 (E.D. Va. Oct. 15, 2025) (released on his own recognizance); Diaz Gonzalez v. Lyons et al., 1:25-cv-1583-LMB-IDD, Dkt. No. 10 (E.D. Va. Oct. 15, 2025) (released on his own recognizance); Gomez Alonzo v. Simon et al., 1:25-cv-1587-LMB-LRV, Dkt. No. 20 (E.D. Va. Oct. 9, 2025) (released under bond of $1,500); Perez Bibiano v. Lyons et al., 1:25-cv-1590-LMB-WEF, Dkt. No. 10 (E.D. Va. Oct. 14, 2025) (released on his own recognizance); Guerra Leon v. Noem et al., 1:25-cv-1634-LMB-WEF, Dkt. No. 14 (E.D. Va. Oct. 22, 2025) (released on his own recognizance); Melendez v. U.S. Immigr. & Customs Enf't et al., 1:25-cv-1622-LMB-WBP, Dkt. No. 14 (E.D. Va. Oct. 28, 2025) (released on his own recognizance); see also Chaudhari v. Crawford et al., 1:25-cv-1772-LMB-IDD, Dkt. No. 14 (E.D. Va. Oct. 27, 2025) (releasing a petitioner from ICE custody after this Court determined that he had already been released on bond pursuant to § 1226(a)). Moreover, DHS has chosen not to appeal the Immigration Judges' bond decisions.

Saravia has been present in the United States since 2008, and because § 1226(a) sets forth "the default rule" for detaining and removing noncitizens "already present in the United States," Jennings v. Rodriguez, 583 U.S. 281, 303 (2018), Saravia's detention is governed by § 1226(a). And under § 1226(a) and its implementing regulations, he is entitled to a bond hearing before an Immigration Judge, in which an Immigration Judge must determine whether he poses a danger to the community, and whether he is a flight risk. 8 U.S.C. § 1226(a); 8 C.F.R. § 1236.1(d)(1). Unless an Immigration Judge makes such a determination, Saravia's continued detention is unlawful.

III.

5

For all the reasons stated above, Saravia's Petition [Dkt. No. 1] is GRANTED, and it is hereby

ORDERED that Saravia be promptly released from custody, with all his personal property, pending his bond hearing before an Immigration Judge. Saravia must live at the fixed address identified in his Proposed Release Plan and appear at the bond hearing once the government notifies him of its date, time, and location; and it is further

ORDERED that respondents provide Saravia with a standard bond hearing before an Immigration Judge pursuant to 8 U.S.C. § 1226(a) within 14 days of the date of this Order; and it is further

ORDERED that respondents are ENJOINED from denying bond to Saravia on the basis that he is detained pursuant to 8 U.S.C. § 1225(b)(2); and it is further

ORDERED that, if Saravia is granted bond, the federal respondents be and are ENJOINED from invoking the automatic stay provision at 8 C.F.R. § 1003.19(i)(2)[4]; and it is further

ORDERED that respondents file a status report with this Court within 3 days of the bond hearing, stating whether Saravia has been granted bond, and, if his request for bond was denied, the reasons for that denial.

The Clerk is directed to enter judgment in Saravia's favor pursuant to Federal Rule of Civil Procedure 58, forward copies of this Order to counsel of record, cancel the hearing scheduled for October 31, 2025, and close this civil action.

Entered this 30 day of October, 2025.

/s/ _____
Leonie M. Brinkema
United States District Judge

Alexandria, Virginia

---

[4] This Court has previously found that "the automatic stay imposed in immigration cases constitutes an unequivocal violation of due process." Hasan, 2025 WL 2682255, at *13.